*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHERRY LYNN MANDEL,

Defendant-Appellant.

UNPUBLISHED
February 29, 2024

No. 351954
Saginaw Circuit Court
LC No. 18-045773-FC

ON REMAND

Before: MARKEY, P.J., and BOONSTRA and CAMERON, JJ.[1]

PER CURIAM.

Defendant was convicted, following a jury trial, of assault with intent to commit murder (AWIM), MCL 750.83, assault with intent to do great bodily harm (AWIGBH), MCL 750.84 (as a lesser-included offense of AWIM), and two counts of possessing a firearm while committing a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to consecutive prison terms of 225 months to 30 years for the AWIM conviction and 38 months to 10 years for the AWIGBH conviction, with each sentence to be served following the statutory two-year prison term for its attendant felony-firearm conviction. Defendant appealed by right, and this Court affirmed her convictions and sentences. *People v Mandel*, unpublished opinion per curiam of the Court of Appeals, issued November 4, 2021 (*Mandel I*) (Docket No, 351954). Defendant applied to the Michigan Supreme Court for leave to appeal this Court's decision; in lieu of granting leave to appeal, the Supreme Court vacated this Court's judgment "to the extent that it is inconsistent with" the Supreme Court's decision in *People v Posey*, 512 Mich 317; ___ NW3d ___ (2023) (*Posey II*) (Docket No. 162373), and remanded this case to this Court for reconsideration in light of *Posey II*. *People v Mandel*, ___ Mich ___; ___ NW2d ___ (2023) (*Mandel II*) (Docket No. 163860). We again affirm.

---

[1] Judge Cameron has been designated to serve in the stead of former Judge Jane M. Beckering, who served on the panel that heard this case on direct appeal.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The factual and procedural history of this case prior to the initial appeal was summarized in this Court's previous opinion:

> Defendant's wife, Angela Mitchell, began a romantic relationship with another woman, Lisa Gonzalez-Barillas, in 2017, and moved out of the home she shared with defendant in 2018 to live with Gonzalez-Barillas. On December 4, 2018, Mitchell returned home from work and found defendant waiting for her with a gun. Defendant instructed Mitchell to go into the house, where defendant restrained her with duct tape and hit her with a wrench. Defendant retrieved the duct tape from a backpack she had brought with her. Defendant then waited for Gonzalez-Barillas to return home, and non-fatally shot both Mitchell and Gonzalez-Barillas when Gonzalez-Barillas entered the house. Mitchell was able to free herself from her restraints and attack defendant; defendant was shot during the struggle for the gun. Mitchell and Gonzalez-Barillas both called 911.

> Gonzalez-Barillas told police that defendant had opened the door to the house just as she was entering, and shot her in the abdomen. Gonzalez-Barillas said she heard two more shots as she ran to the neighbor's house to escape defendant. Mitchell told police that defendant had confronted her when she drove into the house's attached garage and that defendant was wearing dark clothing and holding a wrench in one hand and a gun in the other. Mitchell told police that defendant had asked her "where the f**k is [Gonzalez-Barillas]" after restraining her. Mitchell further stated that defendant had fired the gun at her while she was restrained, hitting her in her right side, and that during the subsequent struggle defendant was shot in the leg. Defendant told police, who interviewed her at the hospital, that she had just wanted to scare Mitchell and try to talk to her about their relationship, but it "just went wrong." Defendant stated that the gun had accidentally discharged twice, once when Gonzalez-Barillas entered the house and once during the struggle with Mitchell.

> Mitchell and Gonzalez-Barillas both testified at trial regarding the events of December 4, 2018. A police detective testified that defendant's backpack, recovered from the scene, contained mace, a picture of defendant and Mitchell, a bottle of whiskey, a box of ammunition, a box cutter, and a pair of pliers. Defendant did not testify at trial.

> Defendant was convicted as described. At sentencing, defendant's minimum sentence guidelines range for AWIM was calculated at 135 to 225 months, and for AWIGBH was calculated at 19 to 38 months; defendant agreed that the guidelines were scored properly. The trial court sentenced defendant at the high end of the guidelines range for both offenses. [*Mandel I*, unpub op at 1-2.]

On appeal, defendant challenged her sentences as disproportionate and unreasonable.[2]  This Court held that, because defendant's sentences fell within the range recommended by the sentencing guidelines, MCL 769.34(10) required that they be affirmed.  *Mandel I*, unpub op at 3.  This Court also noted in a footnote that defendant had not "identified any unusual circumstances" that warranted finding her within-guidelines sentences to be disproportionate.  *Mandel I*, unpub op at 2 n 1.  We now consider the issue anew following the Supreme Court's remand in *Mandel II*.

## II.  STANDARD OF REVIEW

We review for an abuse of discretion a challenge to the reasonableness of a criminal sentence.  *People v Posey*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (*Posey III*) (Docket No. 345491).  A trial court abuses it discretion when it violates the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), which requires sentences to be "proportionate to the seriousness of the circumstances surrounding the offense and the offender."  *Posey III*, slip op at 2, quoting *Milbourn*, 435 Mich at 636.

## III.  ANALYSIS

Defendant argues that her sentences are disproportionate and therefore unreasonable.  We disagree.

The first sentence of MCL 769.34(10), which governed our decision in *Mandel I*, provides:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals *shall affirm that sentence* and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence.  [Emphasis added.]

In *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), our Supreme Court held that the Michigan sentencing guidelines were unconstitutional to the extent that they were mandatory, yet did not explicitly strike down the first sentence of MCL 769.34(10).  Indeed, post-*Lockridge*, this Court continued to affirm the viability of MCL 769.34(10).  See, e.g., *People v Schrauben*, 314 Mich App 181, 196 & n 1; 886 NW2d 173 (2016), overruled in part *Posey II*, 512 Mich at 349 (lead opinion of BOLDEN, J.).  This was the state of the law at the time this Court decided *Mandel I*.

---

[2] In her Standard-4 pro se supplemental brief filed in her initial appeal under Supreme Court Administrative Order No. 2004-6, defendant also argued that her trial and appellate attorneys were ineffective in a variety of ways.  Because those alleged errors related to her trial counsel's performance at trial (and her appellate counsel's alleged failure to raise those errors in defendant's main brief on appeal), and our Supreme Court only remanded this case for reconsideration in light of *Posey II* and denied leave "[i]n all other respects," *Mandel II*, ___ Mich at ___, we leave undisturbed our holdings related to those alleged errors.

In *Posey II*, a majority of the Supreme Court held that the first sentence of MCL 769.34(10) was unconstitutional. *Posey II*, 512 Mich at 349 (lead opinion of BOLDEN, J.).[3] Therefore, the majority held that "appellate courts must review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." *Id.* at 352 (lead opinion of BOLDEN, J.). However, "[t]he guidelines remain important as an advisory resource and continue to be a highly relevant consideration on appeal." *Id.* (quotation marks omitted) (lead opinion of BOLDEN, J.). Moreover, within-guidelines sentences are presumptively proportionate, and the defendant bears the burden of overcoming that presumption. *Posey II*, 512 Mich at 359 (lead opinion of BOLDEN, J.), 411 (opinion by WELCH, J.); see also *Posey III*, slip op at 2.

As we noted in *Mandel I*, defendant argues that certain characteristics of the offense and the offender required the trial court to impose a lower sentence in this case. See *Mandel I*, unpub op at 2 n 1. Specifically, defendant argues that the assault with intent to murder charges were "not particularly serious" because Gonzalez-Barrillas was "shot just a single time" before fleeing,

---

[3] *Posey II* was comprised of four separate opinions. Justice Bolden's lead opinion was joined by Justice Bernstein. Justice Cavanagh and Justice Welch agreed with the lead opinion's holding that the first sentence of MCL 769.34(10) was invalid. See *Posey II*, 512 Mich at 361 (opinion by CAVANAGH, J.), 391 (opinion by WELCH, J.). However, Justice Welch disagreed that "this conclusion is alone compelled" by *Lockridge* and *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017). Justice Welch concluded that the constitutional defects in MCL 769.34(10) were cured by *Lockridge*'s holding that the Michigan sentencing guidelines were advisory, without the necessity of striking down the first sentence of MCL 769.34(10). Therefore, Justice Welch did not agree "that reliance upon those cases alone provides a pathway for striking down the relevant portion of MCL 769.34(10)." *Id.* (opinion by WELCH, J.). Rather, Justice Welch proposed a different legal analysis based on the infringement of an individual's constitutional right to seek appellate review of the results of a criminal prosecution. *Id.* (opinion by WELCH, J.), citing Const 1963, art 1, § 20. This Court has stated that an "opinion in which a majority of the justices failed to concur on the exact reasoning for the holding" is a plurality opinion and not "technically" binding on this Court. See *People v Scarborough*, 189 Mich App 341, 344; 471 NW2d 567 (1991). However, whether or not *Posey II*'s holding regarding the constitutionality of the first sentence of MCL 769.34(10) is binding on this Court under the doctrine of stare decisis, the fact remains that a majority of the Supreme Court has held that this Court may not simply rely on MCL 769.34(10) in declining to review a within-guidelines sentence. Further, the Supreme Court was unanimous in issuing the order vacating our opinion in *Mandel I* to the extent it conflicted with *Posey II*. The conflict between *Mandel I* and *Posey II* is squarely based on whether a within-guidelines sentence is reviewable for reasonableness or required to be affirmed under MCL 769.34(10). Additionally, Justice Welch (as well as Justice Cavanagh) concurred fully with the portion of the lead opinion establishing a rebuttable presumption of proportionality, and Justice Welch specifically "agree[d] with the lead opinion's decision to adopt an appellate presumption of proportionality for review of within-guidelines sentences that can be rebutted by a defendant." *Posey II*, 512 Mich at 411 (opinion by WELCH, J.). Accordingly, we conclude that the Supreme Court has established that we may not rely on MCL 769.34(10) in declining to review a within-guidelines sentence, regardless of the Justices' alternate bases for that conclusion.

because Mitchell was "not shot and her injuries were far less serious," and because Gonzalez-Barrillas was "not the focus of this crime." Defendant's argument on this point lacks merit. Defendant lay in wait for Gonzalez-Barrillas and shot her from a point of ambush as she entered her house. If Gonzalez-Barrillas had died from her wound, defendant likely would have been charged with and convicted of first-degree premeditated murder. Further, Mitchell testified that she *was* shot by defendant, after which there was a struggle for the gun in which Mitchell was ultimately successful (and defendant was shot). In essence, were it not for sheer happenstance and Mitchell's courage in fighting back against an armed assailant, the encounter may well have ended in at least one, if not two or even three, deaths. Defendant's effort to minimize the seriousness of the offenses she committed is unpersuasive. See *Posey III*, ___ Mich App at ___; slip op at 3 ("Defendant is fortunate that he is not sitting in a prison cell serving a life sentence for first-degree murder.").

Defendant's remaining arguments fare no better. Defendant maintains that she lacked a history of criminal convictions, but her lack of a prior criminal record factored significantly into the determination of her recommended sentencing range, which is calculated based on an offender's prior record variable (PRV) and offense variable (OV) scores. Defendant's presentence information report (PSIR) indicates that she had no prior felony convictions and it calculated her PRV score (for each of her primary convictions) at 10 points based only on the fact that she was convicted of a related felony-firearm offense in this very case. See MCL 777.57. Defendant does not explain how her low PRV score renders the trial court's selection of a sentence within the recommended guidelines range unreasonable. Similarly, defendant does not explain how the mere fact that defendant did not commit these offenses until her mid-50s renders the trial court's decision unreasonable. And again, the fact that she, as defendant puts it, "committed no crimes for over 50 years" was already factored into her PRV score.

Defendant also argues that her lack of a criminal record and the circumstances surrounding the offenses show that she would not be likely to "commit additional offenses, especially with counseling and the passage of time." The record shows, however, that defendant's victims had been hiding from her for months, and Gonzalez-Barillas stated to the agent who prepared the PSIR that she believed defendant would attempt to kill her again. The record also shows that defendant sent a picture of Mitchell (with duct tape on her hands and mouth) to Mitchell's sister, accompanied by a message that said in relevant part, "I shot your sister . . . . I shot her and her girlfriend." The trial court also noted that defendant had shown little remorse during the pendency of the proceedings, referring to Gonzalez-Barrillas by derogatory names multiple times and threatening to have Mitchell deported. Defendant does not explain how this record supports the conclusion that the trial court erred in its consideration of defendant's rehabilitative potential.

Ultimately, "[a]n appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). In this case, but for factors outside of defendant's control, her actions would have resulted in at least one, if not two, premeditated murders. Moreover, the mere fact that defendant apparently believes that her actions were motivated by love does not mitigate their severity. We conclude that defendant's sentences in this case "serve to (1) protect society from a patently dangerous individual, (2) appropriately discipline defendant for [her] egregious conduct, and (3) deter others from engaging in similar criminal behavior." *Posey III*, slip op at 3. Defendant has not overcome

the presumption of proportionality and has accordingly failed to demonstrate that the trial court abused its discretion or imposed unreasonable sentences. *Posey II*, 512 Mich at 359 (lead opinion of BOLDEN, J.); see also *Posey III*, slip op at 2.

Affirmed.

/s/ Jane E. Markey
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron